# EXHIBIT A

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| KATHLEEN HORNE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF FEDERAL WAY and STEPHEN McNEY.<br><br>　　　　Defendants. | No.<br><br>COMPLAINT |

## I.　NATURE OF THE CASE

1.1　Kathleen Horne, formerly an Administrative Assistant with the City of Federal Way, brings this lawsuit against the City and its former Intergovernmental & Public Affairs Officer Stephen McNey, for creating, maintaining, and tolerating a sexually and racially hostile work environment and for retaliating against her for opposing such discrimination.

1.2　For nearly a year, Defendant McNey subjected Ms. Horne to a campaign of workplace harassment with both racist and sexual comments. Ms. Horne reported this harassment to her direct supervisor and manager Pam Jones, who refused and failed to take any remedial action because it was "an election year" for the Mayor. Eventually the City's Human Resources Director Vanessa Audett opened an investigation into Mr. McNey's conduct. But the City allowed Defendant McNey to gracefully resign from the City employment before completing its investigation and without terminating him. Ms. Audett then closed the investigation and destroyed all of her investigative notes.

COMPLAINT - 1

1.3    But it did not end there. After Defendant McNey's departure, Ms. Horne was subject to retaliatory hyper scrutiny and unwarranted criticism by Ms. Jones complaining about Defendant McNey and Ms. Jones' own failure to take prompt and effective remedial action to protect Ms. Horne from further harassment. Upon reporting Ms. Jones' retaliatory management to Ms. Audett, Ms. Audett herself began a campaign of retaliation against Ms. Horne, and ultimately rejected Ms. Horne's complaints both about Defendant McNey and Ms. Jones as unsupported.

1.4    As a result of Defendant McNey's virulent harassment of her and the retaliatory management that resulted from her opposing such discrimination, Ms. Horne needed to take a medical leave of absence. The City eventually terminated Ms. Horne's employment, claiming that it could no longer accommodate her disabilities and need for additional leave. The Defendants' actions caused Ms. Horne severe and immense emotional harm.

## II.    PARTIES

2.1    Plaintiff Kathleen Horne is an individual and a married woman who resides in King County, Washington. At all times relevant, she was an employee of Defendant City of Federal Way within the meanings of employment laws and statute, RCW 49.60 *et. seq.*, and the Fourteenth Amendment to the United States Constitution.

2.2    Defendant City of Federal Way is a municipality formed under the laws of the State of Washington and located in King County, Washington. At all times relevant, Defendant City of Federal Way was an employer of Plaintiff Kathleen Horne within the meaning of employment laws and statute, RCW 49.60 *et. seq*, and the Fourteenth Amendment to the United States Constitution.

2.3    Defendant Stephen McNey is an individual man who resides in Washington. At all times relevant, and until his departure from employment with the City of Federal Way, Defendant McNey was City's Intergovernmental & Public Affairs Officer. Between January 2021 and February 2023, Defendant McNey was an employer of Plaintiff and a manager within the meaning of employment laws and statute, RCW 49.60 *et. seq.*, and the Fourteenth

Amendment to the United States Constitution. At all times relevant, while employed by the City, Mr. McNey acted under color of state law.

### III.   JURISDICTION AND VENUE

3.1   This Court has jurisdiction over this matter pursuant to RCW 4.28.020 and RCW 4.28.080. The Superior Court of King County, State of Washington, has subject matter jurisdiction over this action pursuant to RCW 2.08.010.

3.2   Venue is proper in King County under RCW 4.12.025 because the Defendants reside in King County and a substantial part of the events and omission giving rise to Plaintiff's claims occurred in King County.

### IV.   FACTS

4.1   Defendant City of Federal Way employed Plaintiff Kathleen Horne as an Administrative Assistant II from July 2020 until her termination in July 2024. During that time her direct supervisor was Pam Jones, Executive Assistant to the Mayor of Federal Way, Jim Ferrell.

4.2   In 2017 Defendant Stephen McNey resigned from the City of Federal Way after news coverage that a special prosecutor weighing charges of fourth-degree domestic violence assault and third-degree domestic violence malicious intent related to an incident with his wife. Despite knowing this history, Defendant City re-hired Defendant McNey as its Intergovernmental & Public Affairs Officer in January 2021. Defendant McNey was a manager at Defendant City and an employer of Ms. Horne following his 2021 hiring.

4.3   Soon after his hiring, Defendant McNey began sexually harassing Ms. Horne by making inappropriate sexual comments and jokes, soliciting her for sex, showing her sexual photographs, and making sexually explicit, hostile, and racist comments about Ms. Horne's husband, who is Black. The following is a non-exhaustive list of such conduct:

   4.3.1   Throughout Ms. Horne's interactions with Defendant McNey, he would make a point to tell her how many different ethnic types he had "been with."

4.3.2   At times during Ms. Horne's interactions with Defendant McNey, he said to her, "Hey, Skinny Minny…just try not to lose that ass!"

4.3.3   Throughout Ms. Horne's employment, Defendant McNey made a number of racist and hostile comments about Ms. Horne's husband, asking her how well-endowed he was and referring to people of mixed-race heritage as "mulatto," an outdated and offensive slang term, knowing that Ms. Horne has children of a multi-racial heritage.

4.3.4   At some point during Ms. Horne's employment, Defendant McNey arrived late for work and bragged about forcing his wife to give him oral sex that morning. Ms. Horne told him that she did not want to hear about their private affairs.

4.3.5   At some point during Ms. Horne's employment Defendant McNey approached Ms. Horne with a Post-It note with crude sexual connotations and attempted to elicit a reaction from her.

4.3.6   Throughout 2022, Defendant McNey would brag about how many women he had "been with," past and present, that work at City Hall and are involved in local politics, and subject Ms. Horne to details of those sexual encounters.

4.3.7   In early 2022, Defendant McNey tried to get Ms. Horne to look at his genitals by saying, "You can see my junk with the pants I am wearing."

4.3.8   In late spring of 2022, Defendant McNey said to Ms. Horne, "Look what [my wife] sent me," and showed her a picture of his wife's breasts and genitals that she had texted him.

4.3.9   In August of 2022, shortly after Ms. Horne's husband suffered a stroke, Defendant McNey commented, "Hey, if he doesn't make it, give me a call," implying a sexual attraction and desire to have sexual relations with her.

4.3.10  In the fall of 2022, Defendant McNey tried to show Ms. Horne sexually explicit pictures of a woman City of Federal Way Municipal Court Clerk that he said were taken in the women's bathroom stall at City offices. Defendant McNey also bragged to Ms. Horne about how he had "gone down" with the Court Clerk in the Police

COMPLAINT - 4

Department bunk rooms. He later bragged to her about how many times he'd "gone down the hall" with the Court Clerk since she is in an "open relationship."

4.3.11  In late 2022, Defendant McNey asked Ms. Horne for help measuring his office for new seating. When he handed her the tape measure, he pulled it out to nine inches and said, "I bet you get this all the time," referencing Ms. Horne's husband, referring to stereotypes about the size of Black men's genitals.

4.3.12  In December of 2022, Defendant McNey, commenting on Ms. Horne's husband having another stroke, said, "Hey, let me know if your husband doesn't make it," once again implying sexual attraction and a desire for a sexual relationship. He then laughed and walked away.

4.3.13  In 2023, Defendant McNey told Ms. Horne that Vanessa Audett, Human Resources Director for Defendant City, had "hit on him" and asked him out on a date. He repeatedly said how she was "flirting" with him. This made Ms. Horne feel that she could not go to Human Resources if its director had a sexual relationship with her primary abuser.

4.3.14  In early 2023, after a new woman Economic Development Director, was hired by the City, Defendant McNey immediately targeted her and told Ms. Horne that he was going to have sex with the Economic Development Director during the Sister Cities trip to Japan and South Korea in April of 2023. Defendant McNey would also talk about how the Economic Development Director would "purposely stand with her bum out" so he'd "have to look at it." Defendant McNey would also talk about the Economic Development Director's shirt choices to Ms. Horne, commenting that she wore "tight shirts" for him. He also told Ms. Horne that the Economic Development Director was always touching him and flirting, although Ms. Horne never observed that.

4.3.15  During February of 2023, a mandatory all staff sexual harassment video was distributed by email from Human Resources to all staff. Defendant McNey immediately came to Ms. Horne and told her that he had asked Ms. Audett about it. He

joked to Ms. Horne that he "was in trouble now," and said he asked Ms. Audett if it was "okay if it was consensually received."

  4.3.16 On February 7, 2023, Defendant McNey told Ms. Horne that if he had won the PowerBall lottery that he'd come to work with no pants on and would slap everyone in the face with his penis. Then he would tell everyone to "go fuck themselves" and then he would leave.

  4.3.17 That same day, Defendant McNey asked Ms. Horne if her husband would let someone have sex with her for $100 million, or if she herself would do that for money, commenting, "Everyone has a price." When Ms. Horne told him that she would never sell her soul for money, Defendant McNey laughed and said that he would pay someone $10 million to take his wife and keep her.

4.4 Ms. Horne was terrified to make any reports about Defendant McNey's behavior since he made many opaque and direct threats to her during his time employed with Defendant City. A non-exhaustive list of these threats include the following:

  4.4.1 Defendant McNey repeatedly told Ms. Horne that he has mafia connections and can make anyone disappear with no trace back to him;

  4.4.2 Defendant McNey knew where she lived and told him that he has been diagnosed with "Explosive Anger Disorder" and is currently attending court-appointed anger management classes;

  4.4.3 Defendant McNey told Ms. Horne, if anything like last time happens he will make a mess and not go quietly, in apparent reference to the last time his violent behavior resulted in an exit from the City;

  4.4.4 Defendant McNey regularly bragged about possessing firearms and told Ms. Horne that, during his last employment with the city, he kept a firearm in his office desk;

  4.4.5 Defendant McNey flouted his close relationship with the Mayor and his apparent influence in the City, including references to being able to get Director-level

employees, the City Attorney, the City Administrator, and other senior municipal leaders fired through his ability to influence the Mayor;

    4.4.6   Defendant McNey would frequently comment "I'm going to kill _____" when he was upset about something or someone.

    4.5   Despite her fear, Ms. Horne made frequent reports of his conduct to her immediate supervisor, Pam Jones. Ms. Jones acknowledged the reports and did not doubt their truth, but refused to do anything because it was an "election year."

    4.6   On February 13, 2023, Ms. Horne and Ms. Jones verbally complained to Vanessa Audett, Human Resources Director for the City. That same day, Defendant McNey was placed on administrative leave and escorted from City Hall. He was also directed not to make or have any further contact with City of Federal Way female staff members.

    4.7   On February 14, 2023, Ms. Audett emailed a lawyer at Summit Law Group with a summary of her notes from an initial harassment complaint statement taken from two complainants. Plaintiff's counsel has obtained this email through the Public Records Act and attached it as Exhibit 1 to this Complaint. Although redacted pursuant to PRA exclusions, Counsel provides Exhibit 1 on faith and belief that it discusses Ms. Horne' and Ms. Jones' conversation with Ms. Audett about Defendant McNey from the previous day. In that communication, Ms. Audett stated that the complainants were terrified of retaliation from Defendant McNey, identified as the "Mayor's personal friend/colleague." Ms. Audett's communication recounting the meeting with the complainants sets out many of the events discussed above.

    4.8   In addition to documenting Ms. Horne's fears and experience with Defendant McNey, Ms. Audett's acknowledged that Defendant McNey's inappropriate behavior began shortly after he was rehired by the city in January 2021. Ms. Audett's communication also contains suggestions from the complainants about other City staff to speak to, although that text has been redacted.

4.9  Ms. Audett also documented that, after Defendant McNey was sent home on paid administrative leave pending investigation the previous day, a package arrived addressed to Defendant McNey. Upon opening the package, she found inside a ceramic coffee mug that says "'Boobies Make Me Smile' with the o's in Boobies displayed as breasts. A note accompanied the gift reading "You are like boobies to me. You make me smile. From J."

4.10  Finally, Ms. Audett recounted her own experiences with Defendant McNey. She documented that Defendant McNey has made inappropriate comments to her in the past, such as telling her that the Mayor thinks she is hot.

4.11  Ms. Audett closed with the following: "I think he's a creep and when I was hired, 6-8 people warned me not to trust him or believe a word he says," demonstrating widespread knowledge of Defendant McNey's behavior.

4.12  On February 17, Summit Law Group identified an investigator for the complaints.

4.13  On February 23, 2023, Defendant McNey submitted his resignation via email. His resignation was effective at the end of the day on February 24, 2023. However, personnel information obtained by Counsel through the Public Records Act indicates that his departure was classified as a "termination."

4.14  Following Defendant McNey's resignation, Ms. Audett met with Ms. Horne and Ms. Jones to inform them that the investigation would not be completed since the City could not compel a former employee to participate in the investigation and since there were no witnesses to the alleged conduct. None of the City employees named by Ms. Horne and Ms. Jones were interviewed by Ms. Audett, the investigator hired by the Summit Law Group, or any one else. Ms. Audett then destroyed all of her investigative notes.

4.15  On March 3, 2023, the Federal Way Mirror published an article on Defendant McNey's departure where Defendant McNey indicated that his departure from the City was by reason of burnout and medical issues. City Administrator Brian Davis was quoted in the article on the issue of filling the now vacant position. The City did not contest or refute Defendant

McNey's characterization of his departure despite their own documents showing that he was terminated for his behavior.

4.16    Unfortunately, Ms. Horne's work environment hardly improved after Defendant McNey's departure. Ms. Jones soon began a retaliatory campaign against Ms. Horne, frequently raising her voice at her in both private and public, constantly criticizing her, micromanaging her time, and generally making her life at work a living hell. Ms. Horne dreaded coming to work each day because of Ms. Jones' behavior.

4.17    On April 25, 2023, Ms. Horne complained about this behavior to City Administrator Brian Davis. And, on April 28, Ms. Horne filed a formal written complaint with Human Resources that encompassed both Mr. McNey's sexual commentary and Ms. Jones' retaliatory management practices, citing Policy Advisor Bill Vadino as a witness to Ms. Jones' behavior.

4.18    Ms. Audett, Defendant City's Human Resources Director, met with Ms. Horne about her complaint on May 1, 2023. During this meeting, which lasted three hours, Ms. Horne was subject to further retaliation and harassment by Ms. Audett herself in the form of an interrogation, including the following:

    4.18.1    Demanding from Ms. Horne why she had not gotten a restraining order against Defendant McNey if she was so afraid for her safety;

    4.18.2    Challenging the measures Ms. Horne had taken to protect herself outside of work, which included getting extra cameras and security for her home;

    4.18.3    Attempting to guilt Ms. Horne by saying that Defendant McNey had a wife, ex-wife, kids, and a mom to think about;

    4.18.4    Stating that Defendant City has no obligation to protect Ms. Horne from Defendant McNey since he is no longer a city employee;

    4.18.5    Demanding that Ms. Horne come up with the City's response to the Federal Way Mirror article;

    4.18.6 Challenging Ms. Horne's statement that Defendant McNey is violent, stating, "Just because he gets a girl drunk and slept with her doesn't mean he raped her." This was in reference to a story Defendant McNey told Ms. Horne about waiting ten years to get revenge on a woman who had wronged him;

    4.18.7 Dismissing Defendant McNey's domestic violence history as irrelevant. When Ms. Horne told Ms. Audett that Defendant McNey had shown her pictures of his wife's bruised arms, and told people that he did that, Ms. Audett discounted that experience;

    4.18.8 Repeatedly insisting that Ms. Horne does not have a sexual harassment case, stating that "there is no law in Washington";

    4.18.9 Stating that Defendant McNey was "just a disgusting psychopathic person" but that he is more concerned with his family and money than retaliating against Ms. Horne for her complaints; and

    4.18.10 Dismissing Ms. Horne's complaints against Ms. Jones, including Ms. Jones' failure to follow up on Ms. Horne's reports about Defendant McNey's behavior over one and a half years.

  4.19 Over the course of the three hours the meeting lasted, Ms. Audett would ask the same question in multiple ways, trying to get Ms. Horne to say something different. In response, Ms. Horne simply told the truth.

  4.20 Ms. Audett concluded the meeting by stating that they would be consulting with an outside law firm for guidance on this since Ms. Audett herself was mentioned in the complaint Ms. Horne filed with Human Resources.

  4.21 Ms. Horne left the meeting feeling gaslit, doubted, and attacked. She felt that Ms. Audett was making her out to be the one making a bigger deal out of things than they were.

  4.22 In the end, Ms. Audett dismissed both the complaint against Defendant McNey and the complaint against Ms. Jones without any adverse findings. In a memo dated May 26, 2023 from Ms. Audett to Mayor Jim Ferrell, a copy of which Ms. Horne was given, Ms. Audett

outlined that she interviewed Bill Vadino, Brian Davis, and Pam Jones in order to investigate Ms. Horne's sexual harassment, discrimination, hostile work environment, and retaliation allegations. She found all four of these allegations to be unsubstantiated. Ms. Audett concluded that Ms. Jones should "receive a verbal reprimand for her Code of Conduct violation" based on a single instance of Ms. Jones yelling at Ms. Horne. Ultimately, however, Ms. Audett blamed both Ms. Jones and Ms. Horne for the decline in their working relationship, and made no adverse findings with respect to Defendant McNey's behavior since he was no longer employed by Defendant City. *See generally* Exhibit 2.

4.23    The entire experience has been humiliating for Ms. Horne. Eventually not able to take the constant gaslighting and poor treatment, Ms. Horne went on medical leave of absence. She has suffered immense emotional harm by being run out of her job for opposing illegal and discriminatory activity that created a hostile work environment.

## V.    CAUSES OF ACTION

5.1    <u>Fourteenth Amendment to the United States Constitution</u> **(42 U.S.C. § 1983)** – The above-described facts state claims for violations under the Fourteenth Amendment's Equal Protection Clause by both Defendants.

5.2    <u>Washington Law Against Discrimination</u> **(RCW 49.60)** – The above-described facts state claims for violations of the Washington Law Against Discrimination, including but not limited to discrimination on the basis of gender by Defendant McNey, a failure to take prompt and effective remedial action by the City, and retaliation for engaging in protected activity by the City, namely opposition of discriminatory practices engaged in by Defendants.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief against Defendants as follows:

6.1    General damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, injury to reputation, and humiliation;

6.2    Prejudgment interest in an amount to be proven at trial;

      6.3      The value of the adverse tax consequences to Ms. Horne from receiving judgment in a single tax year;

      6.4      Reasonable attorneys' fees and costs under 42 U.S.C. § 1988, RCW 49.60, and other applicable law;

      6.5      Declaratory and injunctive relief

      6.6      Leave to amend the Complaint to conform to the evidence presented at trial; and

      6.7      Further and additional relief that the court deems just and equitable.

DATED this 27th day of March, 2025.

Respectfully submitted,

MacDONALD HOAGUE & BAYLESS

By: */s/Joe Shaeffer*
Joseph Shaeffer, WSBA #33273
705 Second Avenue, Suite 1500
Seattle, WA 98104
206-622-1604
Joe@mhb.com

*Attorney for Plaintiff Kathleen Horne*

MacDONALD HOAGUE & BAYLESS

By: *Adarsh Parthasrathy*
Adarsh Niranjan Parthasarathy, WSBA #62319
705 Second Avenue, Suite 1500
Seattle, WA 98104
206-622-1604
AdarshP@mhb.com

*Attorney for Plaintiff Kathleen Horne*